FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 2 1 2019

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

William D. Hyslop
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | 2:19-CR-00008-SAB-2 | |
| v. | Plea Agreement | |
| CHRISTOPHER FAYDO, | | |
| Defendant. | | |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant, Christopher Faydo, and the Defendant's counsel, J. Gregory Lockwood, agree to the following Plea Agreement:

1)    Guilty Plea and Maximum Statutory Penalties:

The Defendant agrees to plead guilty to Count 4 of the Superseding Indictment filed on February 5, 2019, charging the Defendant with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B)(i), (b)(1)(B)(viii), 846. The Defendant understands that the charge contained in the Superseding Indictment is a Class B felony. The Defendant also understands that the maximum statutory penalty for Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B)(i), (b)(1)(B)(viii), 846, is: (1) not less

than five (5) years nor more than forty (40) years imprisonment; (2) a fine not to exceed $5,000,000; (3) a term of supervised release of not less than four (4) years nor more than a life term; (4) denial of certain federal benefits; and (5) a $100 special penalty assessment.

The Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2)    Denial of Federal Benefits:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. §862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. §862.

3)    The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement. The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing

*United States v. Christopher Faydo* - Plea Agreement - 2

guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

4)    Waiver of Constitutional Rights:

The Defendant understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

a)    The right to a jury trial;

b)    The right to see, hear and question the witnesses;

c)    The right to remain silent at trial;

d)    The right to testify at trial; and

e)    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

5)    Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B)(i), (b)(1)(B)(viii), 846, the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, beginning on a date unknown, but at least by on or about October 1, 2018, and continuing until on or about January 12, 2019, in the Eastern District of Washington, there was an agreement between two or more persons to distribute 5 grams or more of actual (pure) methamphetamine, a schedule II controlled substance, and 100 grams or more of a mixture or substance containing heroin, a schedule I controlled substance; and

*United States v. Christopher Faydo* - Plea Agreement - 3

1
2

*Second*, the Defendant joined in the agreement knowing of its purpose and with the intent to help accomplish that purpose.

3

6)    Factual Basis and Statement of Facts:

4
5
6
7
8
9

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for the Defendant's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

10
11
12
13
14
15
16
17
18

In April 2018, special agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began investigating Robert Dvorak ("Dvorak") on suspicion that he was involved in the trafficking of controlled substances throughout Spokane, Washington. Using a confidential human source ("CHS") and an undercover agent ("UC"), the investigation revealed that Dvorak resided at 4914 North Ash Street, Spokane, Washington. This address is within the Eastern District of Washington. The investigation also developed information that Dvorak conducted controlled substance transactions out of this residence that Dvorak shared with his girlfriend, Shawnee Birdtail, and another male individual.

19
20
21
22
23

During one operation, the CHS learned that Dvorak had approximately one pound of methamphetamine that Dvorak kept under his bed. The CHS also watched Dvorak weigh eight ounces of methamphetamine in front of him. Dvorak told the CHS that he deals directly with the cartel and does not do deals in parking lots, only at "my house or your house."

24
25
26
27

During a second operation, Dvorak told the CHS that he does not do "brown", a street term for heroin, but he sells it. Dvorak further stated that he would take a trip to Northern California to "re-up." Dvorak told the CHS that he took a "nerdy white boy" with him to California.

28

In December 2018, ATF special agents conducted two trash pulls from the residence of Dvorak. Special agents located Western Union receipts showing the transfer of money to Mexico. Special agents also located packaging consistent with narcotics trafficking and a weight and price sheet.

On December 28, 2018, ATF special agents executed a search warrant at the Dvorak's residence. During the execution of the search warrant, the agents located 983.8 grams of heroin and 20.06 grams of actual (pure) methamphetamine. Also located in the residence were approximately fifteen firearms, including pistols, rifles, and shotguns.

On January 9, 2019, ATF special agents and Deputy United States Marshals arrested Dvorak at his residence. In a post-*Miranda* interview, Dvorak identified the Defendant as his "runner." A review of the Dvorak's cell phone revealed numerous WhatsApp communications between Dvorak and an individual later determined to be the Defendant discussing the trafficking of controlled substances. A review by the United States Customs and Border Protection revealed that the Defendant crossed the border of the United States and Mexico numerous times in the month leading up to January 2019.

On January 19, 2019, the Defendant was stopped by the Oregon State Police. During the stop, a K-9 detected the presence of controlled substances. A search of the Defendant's vehicle revealed 5,100 gross grams of methamphetamine (this does not appear connected to the conspiracy with Dvorak as Dvorak was in-custody at that time). During a post-*Miranda* interview, the Defendant stated that when the ATF raided Dvorak's residence in December he was on his way back to Dvorak's house with a load of controlled substances.

The Defendant stipulates that it was the object of the conspiracy between he and Dvorak to engage in the distribution of 5 grams or more of actual methamphetamine and100 grams or more of heroin.

*United States v. Christopher Faydo* - Plea Agreement - 5

7)    The United States Agrees:

a)    Dismissal(s):

At the time of sentencing, the United States agrees to move to dismiss Counts 1 and 2 of the Superseding Indictment, which charges the Defendant with:

*Count 1*: Possession with the Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. §841(a)(1), (b)(1)(B)(i);

*Count 2*:  Possession with the Intent to Distribute 50 Grams or More of a Mixture or Substance containing Methamphetamine, in violation of 21 U.S.C. §841(a)(1), (b)(1)(B)(viii); and

b)    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement arising out of Defendant's conduct involving illegal activity charged in this Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before sentencing.

8)    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

a)    Base Offense Level:

The United States and the Defendant agree that the base offense level for Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B)(i), (b)(1)(B)(viii), and 846 is 34. *See* USSG §2D1.1(c)(4). The Defendant understands that the Court at the time of sentencing will determine the final base offense level.

The parties stipulate the methamphetamine found in the Defendant's possession on January 19, 2019, during the Oregon State Patrol search of Defendant's vehicle, shall be included for purposes of relevant conduct. *See* USSG § 1B1.3.

b)    Specific Offense Characteristics:

The United States and Defendant make no agreement regarding the application of specific offense characteristics. The parties are free to argue for or against the application of any specific offense characteristic.

c)    Other Guideline Enhancements:

The parties are free to argue for or against any other enhancements under the USSG noted in the presentence investigation report.

d)    Role in the Offense :

Based upon the Defendant's role in the offense the United States and the Defendant agree the Defendant's base offense should be decreased by two (2) levels because the Defendant was a minor participant. *See* USSG §3B1.2(b).  The Defendant is free to argue he was a minimal participant pursuant to USSG §3B1.2(a) and the United States reserves the right to object to the application of this adjustment.

e)    Safety Valve:

The United States and Defendant agree that the Defendant may be eligible for the safety valve provisions of 18 U.S.C. §3553(f) and U.S.S.G. §5C1.2.  If the Court finds that the Defendant meets the criteria set forth at 18 U.S.C. §3553(f)(1)-(5), the Court shall impose a sentence in accordance with the applicable sentencing guidelines without regard to any statutory minimum sentence.  Additionally, pursuant to USSG §2D1.1(b)(18), if the Defendant meets the criteria set forth in USSG §5C1.2, the base offense level is decreased by an additional two (2) levels.

f)    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit

*United States v. Christopher Faydo* - Plea Agreement - 7

any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than August 15, 2019, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to USSG §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

g)    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the Defendant's criminal history category, which shall be determined after the Presentence Investigative Report is completed.

h)    Final Adjusted Offense Level:

The United States and Defendant agree that the Court will make the final determination of the adjusted offense level at the time of sentencing.

9)    Departures/Variances:

The Defendant intends to request a downward departure/variance from the sentencing guidelines. The United States reserves its right to oppose any downward departure/variance.

10)    Incarceration:

The United States agrees to recommend that the Court impose a sentence at the low-end of the applicable sentencing guideline range as determined by the Court. The Defendant may recommend any legal sentence he deems appropriate.

//

*United States v. Christopher Faydo* - Plea Agreement - 8

11)  <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

12)  <u>Supervised Release</u>:

The United States and the Defendant agree to recommend that the Court impose a 4 year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

a) that the Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

b) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

13)  <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

14)  <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15)  <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

*United States v. Christopher Faydo* - Plea Agreement - 9

16)    <u>Appeal Rights</u>:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court.  Defendant hereby expressly waives his right to appeal his conviction and the sentence the Court imposes, including any restitution order.  Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

17)    <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case.  This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities.  The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

William D. Hyslop
United States Attorney

_____          8/21/19
Patrick J. Cashman                                         Date
Assistant U.S. Attorney

*United States v. Christopher Faydo* - Plea Agreement - 10

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney.  I understand and voluntarily enter into this Plea Agreement.  Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am guilty.

_____        8/21/19
Christopher Faydo                       Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____        8/21/19
J. Gregory Lockwood                     Date
Attorney for the Defendant

*United States v. Christopher Faydo* - Plea Agreement - 11